# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Senior Airman ADAM D. PARKER
## United States Air Force

## ACM 38384

## ____ M.J. ____

## 15 October 2014

Sentence adjudged 9 April 2013 by GCM convened at Minot Air Force Base, North Dakota. Military Judge: Grant L. Kratz (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for life, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Thomas A. Smith.

Appellate Counsel for the United States: Lieutenant Colonel Steven J. Grocki and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final publication.

WEBER, Judge:

The appellant providently pled guilty to rape of a child, aggravated sexual contact with a child, aggravated sexual abuse of a child, two specifications of indecent liberties with a child, two specifications of sodomy with a child, and two specifications of possession of child pornography, in violation of Articles 120, 125, and 134, UCMJ,

10 U.S.C. §§ 920, 925, 934.[1] The adjudged and approved sentence consisted of a dishonorable discharge, confinement for life, and reduction to E-1.

The appellant alleges: (1) the sodomy specifications are multiplicious of the indecent liberties specifications and (2) his sentence is inappropriately severe. We also sua sponte discuss one issue with the post-trial processing of this case.

*Background*

In late September 2012, the appellant was in the midst of an internet-facilitated conversation with his wife while he was deployed to Qatar. The appellant's wife wanted their 3- and 4-year-old daughters to speak with the appellant. However, the younger of the daughters refused to do so and told her mother she did not want her father to come home. The girls then revealed the appellant had engaged in various sexual acts with them, including placing his penis in their mouths. When the appellant's wife confronted the appellant via internet messages, he admitted to engaging in certain sexual acts with the girls.

The appellant's wife promptly reported this incident, and Air Force Office of Special Investigations agents interviewed the appellant in Qatar. He first denied committing any sexual acts with the children but later admitted to placing his penis into his daughters' mouths five times each, mostly while they were blindfolded. He also eventually admitted to committing other sexual activity with them. In addition, the appellant told agents he molested his nieces in nearly identical ways years earlier, before he joined the Air Force. The appellant also admitted to downloading and viewing child pornography, a confession later corroborated by lawful searches of his computer media devices from Qatar and the family's home at Minot Air Force Base.

*Multiplicity*

Among the matters to which the appellant pled guilty were two specifications of indecent liberties with a child by exposing his penis to each of the two girls in their physical presence, and two specifications of sodomy with a child by placing his penis into the mouth of each child on divers occasions. The appellant did not raise any multiplicity issue regarding these charges and specifications at trial, but on appeal, he alleges the sodomy specifications are multiplicious of the indecent liberties specifications because both relate to the same misconduct.

---

[1] The Article 120, UCMJ, 10 U.S.C. § 920, offenses were charged under that version of the code applicable to offenses committed during the period of 1 October 2007 through 27 June 2012. *See* 10 U.S.C. § 920 (2006) (amended by National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3136); *Manual for Courts-Martial, United States*, Punitive Articles Applicable to Sexual Offenses Committed During the Period 1 October 2007 through 27 June 2012, App. 28 (2012 ed.).

The military judge noted a possible issue as he questioned the appellant about the first of the two indecent liberties specifications. The military judge questioned whether the appellant's plea was provident because the appellant stated his daughter generally did not see his penis when he exposed it, and his daughter would not have known he exposed it had he not placed his penis in her mouth. Trial counsel asserted the plea was provident, reasoning that (1) the child was able to "perceive" his exposed penis because he placed it in her mouth; and (2) the appellant "exposed" his penis even though the child was blindfolded, analogizing that a person who exposes himself by opening a trench coat is guilty of indecent liberties even if the victim does not actually look at the exposed areas. Trial defense counsel then also affirmatively asserted the plea was provident, agreeing with both of trial counsel's rationales. The military judge went on to question the appellant regarding the other indecent liberty specification where he engaged in essentially the same behavior with his other daughter. Trial defense counsel raised no concerns regarding the providence of the second indecent liberties specification, and the military judge accepted the appellant's guilty pleas on both.

The appellant contends the sodomy specifications are lesser included offenses of the indecent liberties specifications and are therefore multiplicious. Relatedly, he asserts the two offenses are facially duplicative in that both involved the same act; namely, placing his penis in the children's mouths. The appellant alleges that under the facts of this case, the sodomy specifications did not require proof of a fact not required by the indecent liberties specifications because the appellant blindfolded the children, and the only way in which he "exposed" his penis (thus constituting indecent liberties) was by inserting it into the children's mouths (thus constituting sodomy).

This court normally reviews multiplicity claims de novo. *See United States v. Anderson*, 68 M.J. 378, 385 (C.A.A.F. 2010). However, an unconditional guilty plea forfeits[2] any issues of multiplicity unless the specifications are "facially duplicative." *United States v. Campbell*, 68 M.J. 217, 219–20 (C.A.A.F. 2009); *see also United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009) (distinguishing forfeiture from waiver of multiplicity claims). Whether the specifications are facially duplicative, *i.e.*, factually the same, is a question of law reviewed de novo. *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). Specifications are not facially duplicative if each requires proof of a fact not required to prove the others. *Campbell*, 68 M.J. at 220. In addition to issues of forfeiture, claims of multiplicity may be expressly waived, relinquishing the right to raise

---

[2] Our superior court's decision in *United States v. Campbell*, 68 M.J. 217, 219–20 (C.A.A.F. 2009) stated that the appellant "waived" his ability to raise a multiplicity issue on appeal. However, the court's decision in *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) recognizes that military courts had failed to "consistently distinguish between the terms 'waiver' and 'forfeiture'" and held that a claim of multiplicity was only waived by the appellant's unconditional guilty plea because the appellant agreed to waive all waivable motions in a pretrial agreement. Following *Gladue*, the term "forfeiture" should generally characterize the effect of an unconditional guilty plea on multiplicity claims, absent some affirmative waiver. *See United States v. St. John*¸ 72 M.J. 685, 687 n.1 (Army Ct. Crim. App. 2013) ("We interpret [*Campbell* and related cases] to mean that an unconditional guilty plea, without an affirmative waiver, results in a forfeiture of multiplicity issues absent plain error.").

the issue on appeal—even for facially duplicative specifications—through an intentional relinquishment or abandonment of a known right. *Gladue*, 67 M.J. at 313–14; *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997).

"The prohibition against multiplicity is necessary to ensure compliance with the constitutional and statutory restrictions against Double Jeopardy." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993). The Supreme Court has laid out a "separate elements test" for analyzing multiplicity issues: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Roderick*, 62 M.J. 425, 432 (C.A.A.F. 2006). Accordingly, multiple convictions are permitted if the two criminal allegations each have at least one separate statutory element from each other.

The two specifications of Article 120, UCMJ, Indecent Liberties with a Child, contain the following elements when considered together:

(a) The accused committed certain acts, to wit: exposing his penis;
(b) The acts were indecent;
(c) The accused committed the acts in the physical presence of his children;
(d) The accused committed the acts with the intent to gratify his sexual desires; and
(e) At the time, each of the children was under 16 years of age.

*See Manual for Courts-Martial, United States* (*MCM*), Part IV, ¶ 45.b.(10) (2008 ed.).

The two specifications of Article 125, UCMJ, Sodomy, contain the following elements when considered together:

(a) The accused engaged in unnatural carnal copulation with his children by placing his penis in their mouths; and
(b) At the time, each of the children was under 12 years of age.

*See MCM*, Part IV, ¶ 51.b. (2008 ed.).

The appellant affirmatively waived his right at trial to raise this issue on appeal. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known

right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Trial defense counsel plainly knew they had the right to raise a multiplicity issue if they so chose. In fact, defense counsel had just successfully moved to dismiss a separate specification on multiplicity grounds.[3] Despite this recent encounter with the law of multiplicity, defense counsel affirmatively elected not to raise any issue with the appellant's plea to indecent liberties, even when the military judge raised the issue about whether the appellant was guilty of indecent liberties solely because he inserted his penis in the children's mouths. The military judge gave the defense an opportunity to contest the factual basis for the plea to indecent liberties, and the defense affirmatively asked the military judge to uphold the plea, in part reasoning that the sodomy constituted the necessary exposure for the crime of indecent liberties. *See United States v. Caulfield*, 72 M.J. 690, 692, 695 (C.G. Ct. Crim. App. 2011) (finding waiver rather than forfeiture of multiplicity issue where defense counsel only requested relief based on unreasonable multiplication of charges, and concluding "the military judge did not err and did not abuse his discretion in granting Appellant exactly what he requested"). Defense counsel's actions in this case went beyond merely failing to raise the issue of multiplicity.

Even assuming this issue was forfeited rather than waived, we hold the military judge committed no plain error by failing to sua sponte find the specifications multiplicious. Both sets of specifications contain at least one separate statutory element from the other. The indecent liberties specifications required proof that the appellant committed the acts with the intent to gratify his sexual desires, a requirement not contained within the sodomy article. The sodomy specifications required proof that the appellant engaged in unnatural carnal copulation with his children by placing his penis in their mouths. Indecent liberties contains no requirement to prove physical contact. *MCM*, Part IV, ¶ 45.a.(t)(11) (2008 ed.); *United States v. Scott*, 21 M.J. 345, 348 (C.M.A. 1986). The two articles therefore each contain distinct criminal elements.[4]

In addition, we find the two sets of specifications are not facially duplicative. The appellant committed the crime of indecent liberties with a child the moment he exposed his penis in their presence, even though he blindfolded them most, but not all,[5] of these times. Regardless of whether the girls actually perceived that the appellant exposed his penis before he placed it in their mouths, the crime of indecent liberties with a child only

---

[3] Trial defense counsel successfully moved to dismiss a specification alleging receipt of child pornography on the grounds that it was multiplicious with a specification alleging possession of child pornography. The military judge granted the defense motion just 26 pages before he raised the issue that forms this assignment of error.

[4] In addition, the sodomy specifications required proof that the children were under the age of 12 years while the indecent liberties specifications required proof that they were under the age of 16 years. *See United States v. Bell*, 38 M.J. 523, 524 n.1 (A.C.M.R. 1993) (noting carnal knowledge was not multiplicious with rape because carnal knowledge required proof that the victim had not attained the age of 16 years, an element not required for the offense of rape).

[5] The appellant admitted in the providence inquiry that he exposed his penis to the younger child at least once when she was not blindfolded.

requires proof that the appellant engaged in indecent conduct with them. *See MCM*, Part IV, ¶ 45.a.(t)(11) (2008 ed.). "Indecent conduct" means "that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, Part IV, ¶ 45.a.(t)(12) (2008 ed.). We have no difficulty concluding, consistent with the position asserted by both trial and defense counsel in response to the military judge's questions, that the appellant engaged in indecent conduct simply by blindfolding the girls and exposing his penis in their presence in order to arouse his depraved sexual desires. Under a plain error analysis, we find the appellant's convictions for the two sets of specifications are based on different aspects of his criminal conduct. It is possible for the appellant to have committed the offense of indecent liberties with a child without having committed the offense of sodomy, and the reverse is also true. *Cf. Schmuck v. United States*, 489 U.S. 705, 719 (1989) (discussing lesser included offenses and requirement that evidence proving greater offense must prove elements of lesser included offense). This assignment of error provides no basis for relief.

*Sentence Appropriateness*

The appellant asserts his sentence to confinement for life is inappropriately severe. His argument is partially based on citations to three other courts-martial where a military member was convicted of murdering a child but received lesser sentences. The appellant acknowledges these other cases are not closely related to his own but, nonetheless, asks this court to compare the sentences in these cases to his for the purpose of relative uniformity. *See United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001) (explaining that a Court of Criminal Appeals may, at its discretion, consider and compare other court-martial sentences when reviewing a case for sentence appropriateness and relative uniformity). He also notes matters such as his plea of guilty, his expressions of remorse in his unsworn statement, the testimony on cross-examination of the psychologist indicating the appellant was somewhat treatable, and the testimony of his wife on cross-examination indicating some desire to provide the option for her daughters to meet the appellant when they become adults. In a footnote, the appellant also invites this court to consider the effects of sex offender registration in our sentence appropriateness analysis.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006). *See also United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). Although we

are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

We have reviewed and considered the entire record of trial, including the appellant's arguments on appeal, the particular appellant, the nature and seriousness of the offenses, and the appellant's record of service. We have also considered the cases the appellant cites as part of our overall assessment of the range of punishments typically meted out in courts-martial. While the sentence to confinement for life is severe, it is not inappropriately so. The appellant repeatedly violated his own young daughters for his sexual pleasure. He also intentionally sought out, possessed, and viewed child pornography, using search terms such as "daughter rape." We acknowledge the appellant pled guilty, but the mitigating value of this plea is tempered by the fact that the evidence against him was overwhelming. The appellant's depraved actions toward his toddler daughters will undoubtedly have lifelong effects on them and the appellant's entire family, as the Government's expert testified. We see no reason why the appellant should not similarly feel the effects of his crimes for the remainder of his life. Having considered the entire record of trial, including the appellant's request for recognition of the effects of sex offender registration,[6] we find the appellant's sentence is appropriate.

*Staff Judge Advocate's Recommendation*

The personal data sheet the Government introduced at trial listed no combat or overseas service by the appellant. The appellant did not object to admission of this document. The staff judge advocate (SJA) attached a similar data sheet with his recommendation, again omitting any mention of combat or overseas service by the appellant. The clemency submissions by the appellant and his defense counsel did not allege any error in the SJA's characterization of the appellant's service. Nevertheless, the personal data sheet is plainly erroneous because the appellant was deployed to Qatar at the time his crimes were discovered. In addition, his enlisted performance report for the period ending 7 August 2011 references an earlier 180-day deployment the appellant completed at Al Dhafra Air Base in the United Arab Emirates.

Proper completion of post-trial processing is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to timely comment on matters in the staff judge advocate's recommendation, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error. Rule for

---

[6] We do not specifically hold that the consequences of sex offender registration are a matter this court must consider in its sentence appropriateness determination. We merely elected to give this matter appropriate weight in this case, recognizing both our broad and highly discretionary authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to review sentences and the nature of sex offender registration as a collateral consequence. *Cf. United States v. Talkington*, 73 M.J. 212, 217 (C.A.A.F. 2014).

Courts-Martial 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). Although the threshold for establishing prejudice in this context is low, the appellant must nonetheless make at least some "colorable showing of possible prejudice in terms of how the [perceived error] potentially affected [his] opportunity for clemency." *Id.* at 437.

The SJA erred in omitting any mention of the appellant's overseas or combat service. Although the Rules for Courts-Martial do not explicitly require mention of an accused's overseas or combat service,[7] where a summary of the accused's service record is prepared, that summary must be accurate. This error was plain and obvious, as even a cursory review of the record would reveal the fact that the appellant deployed overseas.

However, we find no material prejudice caused by the error. One of the specifications of possession of child pornography alleges that the appellant possessed the illegal material "at or near Al-Udeid Air Base, Qatar." The language of this specification was provided to the convening authority in clemency. In addition, we see no reasonable possibility that the appellant's service in Qatar would have persuaded the convening authority to grant clemency, particularly when he possessed child pornography there and his crimes were discovered there, apparently necessitating a curtailment of his deployment. We see no indication that the convening authority was notified of the appellant's earlier deployment to Al Dhafra. Under different facts, we might find that this failure potentially affected the appellant's opportunity for clemency. However, the appellant's crimes were so horrific that we see no reasonable possibility that the appellant's service at Al Dhafra would have convinced the convening authority to grant relief. We note that the appellant's overseas or combat service was not so notable to cause him to mention it in his clemency submission or in his sentencing case at trial. In fact, the appellant made no effort at trial or in clemency to stress his military service record, submitting zero decorations, certificates, character letters, awards, thank you letters, or similar documents at either stage. The summary of the appellant's service at Al Dhafra in his enlisted performance report also gives no indication that his service during his deployment was particularly notable, apart from the fact that all combat service is noteworthy.

---

[7] Rule for Courts-Martial 1106 previously required the staff judge advocate's recommendation to include, inter alia, "[a] summary of the accused's service record, to include length and character of service, awards and decorations received, and any records of nonjudicial punishment and previous convictions." *Manual for Courts-Martial, United States*, Part II, Rule for Courts-Martial 1106(d)(3)(C) (2008 ed.). The rule no longer includes this requirement. *See* Analysis of Rules for Courts-Martial, *Manual for Courts-Martial, United States*, A21-88 (2012 ed.). However, Air Force Instruction 51-201, *Administration of Military Justice*, Fig. 3.7 (6 June 2013), states that the personal data sheet should list an accused's overseas service and combat service.

The Government would be well-advised to find no solace in our resolution of this obvious error. The Government's neglectful post-trial processing in a significant case involving confinement for life created an issue where none should have existed. Under different facts, it might well have led to an order for new post-trial processing or even sentencing relief by this court. We take this opportunity in this published opinion to remind staff judge advocates of a point we have pressed before:

> We caution SJAs to take no comfort from this holding. Because the threshold for showing prejudice is so low, it is the rare case where substantial errors in the SJAR, or post-trial process in general, do not require return of the case for further processing. . . . For that reason alone, it behooves SJAs to pay attention to what they are sending to a convening authority and take the time to get it right the first time. More importantly, however, the integrity of our military justice system demands careful attention in each and every case. While any given court-martial may seem routine to a legal office with a busy docket, rest assured it is not routine to the accused. With rare exception, it will be the single most important event in that military member's life. Nor is it routine to the members of the accused's unit, or to the friends, family members, or victims watching carefully to see that justice is served. Slip-shod treatment of the court-martial process, whether at the pre-trial, trial, or post-trial stage, cannot help but undermine faith in the system itself, making it less effective overall as a tool for maintaining military discipline. If a military member's offenses are deemed serious enough to warrant court-martial, they are serious enough to demand the time needed to carefully and correctly shepherd each aspect of the case to conclusion. . . . Unfortunately, that did not happen here.

*United States v. Lavoie*, ACM S31453 (recon), unpub. op. at 4 (A.F. Ct. Crim. App. 21 January 2009).

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

ACM 38384

Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court