# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman CHRISTOPHER L. OLIVER
### United States Air Force

## ACM 38481

## 15 April 2015

Sentence adjudged 26 June 2013 by GCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Donald R. Eller, Jr. (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 24 months, and reduction to E-1.

Appellate Counsel for the Appellant: Major Christopher D. James.

Appellate Counsel for the United States: Major Daniel J. Breen; Major Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

HECKER, SANTORO, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of two specifications of violating a general regulation, one specification of dereliction of duty, and three specifications of adultery, in violation of Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. Contrary to his pleas, the appellant was convicted of five additional specifications of violating a general regulation, one specification of wrongful sexual contact, and one specification of consensual sodomy, in

violation of Articles 92, 120, and 125, UCMJ, 10 U.S.C. §§ 892, 920, 925.[1] The adjudged and approved sentence consisted of a dishonorable discharge, confinement for 24 months, and reduction to E-1.

The appellant argues: (1) he is entitled to new post-trial processing because the staff judge advocate's recommendation (SJAR) contained significant errors; (2) the military judge abused his discretion in admitting a prosecution sentencing exhibit; (3) several specifications are multiplicious or represent an unreasonable multiplication of charges; (4) several specifications are legally insufficient; (5) his guilty plea to two specifications was improvident; (6) the evidence relating to one of the specifications alleging a violation of a general regulation is legally and factually insufficient; (7) unlawful command influence undermined his substantial rights; (8) his sentence is inappropriately severe; and (9) his trial defense counsel were ineffective.[2] As we agree that the staff judge advocate's erroneous recommendation prejudiced the appellant, we order new post-trial processing and do not reach the remaining issues at this time.

*Background*

The appellant was a military training instructor at Lackland Air Force Base. The charges and specifications arose from his efforts to develop, conduct, and maintain personal and intimate relationships with four female trainees and his use of abusive training methods against a member of a flight under his supervision.

The appellant notes three errors in the SJAR. First, the recommendation advised the convening authority that the maximum confinement authorized was 7 years and 6 months compared to the actual maximum sentence of 23 years and 6 months. Second, the SJAR stated that the "primary evidence against the accused consisted of a guilty plea" when in fact the appellant only pled guilty to 6 of the 16 specifications on the charge sheet. Third, the SJAR erroneously stated that there was a pretrial agreement in the case. Not noted by the appellant, but also error, was the SJAR's statement at one point that the accused was convicted of an *offense* (singular).

*SJAR Errors*

Rule for Courts-Martial (R.C.M.) 1106 requires that before the convening authority takes action on the findings and sentence of a court-martial, he or she is to receive a recommendation from the staff judge advocate. The purpose of the SJAR is to assist the convening authority, who is generally not legally trained, in exercising his command prerogative. R.C.M. 1106(d)(1). The appellant alleges that the SJAR

---

[1] The appellant was found not guilty of one specification alleging abusive sexual contact, one specification alleging aggravated sexual assault, and one specification alleging obstruction of justice. He was also acquitted of greater offenses charged in connection with his convictions of wrongful sexual contact and consensual sodomy.

[2] Issues 6–9 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

contained significant errors that impacted his opportunity to receive meaningful clemency consideration.

We normally review the correctness of post-trial processing de novo. *United States v. Parker*, 73 M.J. 914, 920 (A.F. Ct. Crim. App. 2014). However, failure to timely comment on matters in an SJAR forfeits any later claim of error in the absence of plain error. *Id.*; R.C.M. 1106(f)(6); *United States v. Scalo*; 60 M.J. 435, 436 (C.A.A.F. 2005). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

Because of the highly discretionary nature of the convening authority's action on a sentence, we may grant relief if an appellant presents "some colorable showing of possible prejudice" affecting his opportunity for clemency. *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)). This low threshold exists because the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). "Because the threshold for showing prejudice is so low, it is the rare case where substantial errors in the SJAR, or post-trial process in general, do not require return of the case for further processing." *Parker*, 73 M.J. at 921 (quoting *United States v. Lavoie*, ACM S31453, unpub. op. at 4 (A.F. Ct. Crim. App. 21 January 2009)) (internal quotation marks omitted). However, an SJAR error "does not result in an automatic return by the appellate court of the case to the convening authority. Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996).

We have no trouble concluding that each of the three errors noted by the appellant was plain and obvious. The Government argues, however, that the appellant can show no colorable claim of possible prejudice as a result of these obvious errors. The Government asserts that the errors made the appellant's offenses appear less severe, benefitted the appellant by showing that he had taken the first step toward rehabilitation by his plea of guilty, and would have been evident because the convening authority would have known that there was no pretrial agreement. We reject the Government's position, particularly in light of the low threshold of prejudice required in this area and the significant errors in the SJAR. In particular, we are unwilling to presume that the misstatement concerning the maximum imposable punishment did not affect the convening authority's clemency decision. A statement in the SJAR about the maximum punishment an accused faced provides important information to the convening authority to be used in the convening authority's clemency decision. We reject the apparent assertion by the Government that the staff judge advocate's error was less egregious merely because he understated the

maximum punishment instead of overstating it. Rather, it could just as easily be argued that the staff judge advocate's error harmed the appellant's chances for clemency by implying that the members imposed a sentence closer to the maximum, signaling to the convening authority that the members found the appellant's conduct more severe. In addition, the staff judge advocate's error was particularly significant in that he misstated the maximum punishment by a wide margin, representing that it was about a third of what it actually was. Under the circumstances, recognizing that the standard for establishing prejudice is low, we find the appellant has met his burden of establishing a colorable showing of possible prejudice. The pervasive nature of the errors in this SJAR reinforces our decision.[3]

We recently observed what staff judge advocates should already know:

> [I]t behooves SJAs to pay attention to what they are sending to a convening authority and take the time to get it right the first time. More importantly, however, the integrity of our military justice system demands careful attention in each and every case. While any given court-martial may seem routine to a legal office with a busy docket, rest assured it is not routine to the accused. With rare exception, it will be the single most important event in that military member's life. Nor is it routine to the members of the accused's unit, or to the friends, family members, or victims watching carefully to see that justice is served. Slip-shod treatment of the court-martial process, whether at the pre-trial, trial, or post-trial stage, cannot help but undermine faith in the system itself, making it less effective overall as a tool for maintaining military discipline. If a military member's offenses are deemed serious enough to warrant court-martial, they are serious enough to demand the time needed to carefully and correctly shepherd each aspect of the case to conclusion.

*Parker*, 73 M.J. at 921–22 (quoting *Lavoie*, ACM S31453 at 4) (internal quotation marks omitted). The appellant's case was not only important to him, but it also involved significant misconduct toward several trainees. Attention to detail is important in every case, but particularly so in a case of this magnitude and notoriety. The servicing legal office will now have another opportunity to demonstrate its ability to properly administer a case through post-trial processing. A new, correct SJAR will be issued, and the

---

[3] The Government's argument that the convening authority would have known of any pretrial agreement is based on the Government's assumption that the convening authority is a party to any pretrial agreement and thus would be aware that no pretrial agreement existed. This argument is particularly questionable given that the convening authority who took action had taken command only weeks prior to this trial. His predecessor in command referred charges and was the convening authority who would have acted on any pretrial agreement offer.

appellant will be afforded the opportunity to respond. *See United States v. Mendoza*, 67 M.J. 53, 54 (C.A.A.F. 2008) (noting that when a court of criminal appeals sets aside the convening authority's action, a new SJAR and opportunity to respond are required).[4]

*Conclusion*

The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing consistent with this opinion. Article 66(e), UCMJ, 10 U.S.C. § 866(e). Thereafter, Article 66(b), UCMJ, 10 U.S.C. § 866(b), will apply.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[4] Additionally, we note that this represents the third case we have reviewed in recent weeks involving similar errors in the recommendation from this staff judge advocate. *See United States v. LeBlanc*, __ M.J. ___ (A.F. Ct. Crim. App. 2015); *United States v. Rodriguez*, ACM 38519 (A.F. Ct. Crim. App. 14 April 2015) (unpub. op.).