# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32557**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Jonathan N. CONNORS**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 May 2019

———————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Bad-conduct discharge, confinement for 4 months, and reduction to E-1. Sentence adjudged 29 October 2018 by SpCM convened at Ellsworth Air Force Base, South Dakota.

*For Appellant:* Captain David A. Schiavone, USAF.

*For Appellee:* Major Clayton H. O'Connor, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and KEY, *Appellate Military Judges.*

Judge KEY delivered the opinion of the court, in which Senior Judge HUYGEN and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

KEY, Judge:

A military judge sitting as a special court-martial convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement, of one specification of larceny of military property, in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. The military judge sentenced

Appellant to a bad-conduct discharge, confinement for four months, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant asserts new post-trial processing is required because the personal data sheet (PDS) attached to the staff judge advocate's recommendation (SJAR) erroneously noted that Appellant had no overseas or combat service. We find no error that warrants relief, and we affirm the findings and sentence.

## I. BACKGROUND

While assigned as a communication equipment technician, Appellant stole various computers, computer parts, and other electronic equipment over a two-year period of time. Appellant sold some of the items online and kept some of the items for his personal use. With the exception of five laptop computers, all the items Appellant took were no longer being used and were slated to be disposed of as excess military property. The total value of the items Appellant sold was between $15,000 and $18,000.

The Government offered into evidence—without defense objection—a PDS summarizing Appellant's personal data and service record that read in part:

OVERSEAS SERVICE (OCONUS): None

COMBAT SERVICE: None

Immediately prior to admitting the PDS as a prosecution exhibit for sentencing, the military judge had the following exchange with trial defense counsel:

MJ [Military Judge]: [Trial Defense Counsel], did you have the opportunity to review this document?

DC [Trial Defense Counsel]: Yes, Your Honor. But, if I could just have a moment to verify.

MJ: I'd like you to specifically verify with [Appellant] that the overseas service and combat service is correct. Just let me know when you're finished.

DC: Yes, Your Honor. . . . Your Honor, it appears to be in order.

MJ: I'm sorry, say that again.

DC: It appears to be in order.

MJ: Okay. Do you have any objections then to Prosecution Exhibit 2 for identification?

DC: No, Your Honor.

During the Defense's sentencing case, Appellant made a verbal unsworn statement in which he discussed being deployed to Al Dhafra Air Base, United Arab Emirates. After Appellant's unsworn statement, the Defense rested, and the military judge said:

> I do want to just note that [Appellant] referenced a deployment to Al Dhafra, and normally that is on the personal data sheet under the combat service area. So, when I asked counsel if that information was accurate, you both said yes. I mean, I guess some people maybe don't view a deployment to Al Dhafra as a combat zone, but typically we include those kinds of deployments in the personal data sheet. I'm not going to require you to change it, trial counsel, but I just want to note that I note that he deployed and I will certainly take that into appropriate consideration.

For post-trial processing, the PDS attached to the SJAR was identical to the PDS admitted at trial, similarly indicating "none" for overseas and combat service. In Appellant's clemency submission, he requested that the convening authority mitigate the four-month confinement sentence to three months of confinement and one month of restriction to base, but neither this request nor any form of clemency was granted. Although Appellant discussed his deployment in his clemency request, he did not comment on the omission of such service from the PDS.

## II. DISCUSSION

Proper completion of post-trial processing is a question of law we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in or attached to the SJAR forfeits any later claim of error in the absence of plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (citations omitted). "To prevail under a plain error analysis, Appellant [bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65) (additional citation omitted). "Because of the highly discretionary nature of the convening authority's action on [a] sentence," we grant relief if Appellant presents "some colorable showing of possible prejudice" affecting his opportunity for clemency. *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

The SJAR is a concise written recommendation "to assist the convening authority to decide what action to take on the sentence in the exercise of command prerogative" and contains information such as the findings, sen-

tence, confinement credit, a copy or summary of any pretrial agreement, and the staff judge advocate's "concise recommendation." R.C.M. 1106(d). The SJAR "plays a vital role in providing the convening authority with complete and accurate advice in the exercise of command discretion." *Scalo*, 60 M.J. at 436 (citation omitted). Before taking action on an adjudged sentence, the convening authority must consider the SJAR, along with any matters submitted by the accused in a clemency submission or in response to the SJAR. R.C.M. 1107(b)(3)(A).

Under R.C.M. 1001(a)(1)(A)(ii), trial counsel ordinarily presents during presentencing proceedings "personal data relating to the accused and of the character of the accused's prior service as reflected in the personnel records of the accused." Such information is obtained and introduced "[u]nder regulations of the Secretary concerned." R.C.M. 1001(b)(2). Air Force Instruction (AFI) 51–201, *Administration of Military Justice*, Figure A3.16 (8 Dec. 2017),[1] sets out a template for the PDS to present a synopsis of an accused's personal data and character of prior service. Included in the template are two headings pertinent to this case: "OVERSEAS SERVICE (OCONUS): (See Note 3)" and "COMBAT SERVICE: (See Note 4)." *Id.* Note 3 reads: "Identify service for which credit for overseas service was awarded per AFI 36-2110, Assignments. Include dates and locations." *Id.* Note 4 reads: "Identify service for which the member was awarded 'special pay for duty subject to hostile fire or imminent danger' per Department of Defense (DoD) 7000.14-R, *Department of Defense Financial Management Regulation*, Volume 7A, Chapter 10. Include dates and locations." *Id.*

In addition to introducing the PDS at trial, AFI 51–201 calls for attaching the PDS to the SJAR. ¶ 8.16. The purpose of attaching the PDS to the SJAR is to "ensure[ ] that required information concerning the accused's service record is provided to the convening authority." *Id.* ¶ 8.16.1. "Although the Rules for Courts-Martial do not explicitly require mention of an accused's overseas or combat service, where a summary of the accused's service record is prepared, that summary must be accurate." *United States v. Parker*, 73 M.J. 914, 921 (A.F. Ct. Crim. App. 2014) (footnote omitted).

The initial question is whether Appellant has demonstrated error on the PDS, plain or otherwise. We conclude he has not. Appellant argues his de-

---

[1] On 18 January 2019, a new version of AFI 51–201 was promulgated. The citations in this opinion reference the version of AFI 51–201 dated 8 December 2017, which was in effect at the time of the convening authority's action in this case.

ployment to Al Dhafra Air Base should be captured on the PDS but cites no authority for this proposition.

Although R.C.M. 1001 allows for the discretionary introduction of "[p]ersonal data and character of prior service of the accused," this is done "[u]nder regulations of the Secretary concerned." R.C.M. 1001(b)(2). The Manual for Courts-Martial does not specify any format for presenting this information, nor does it specify what particular information is to be included, leaving these details to the Service Secretaries and discretion of trial counsel. As purely a service creation, the Air Force's PDS—and the information contained therein—is subject to Service definitions, criteria, and limitations. Similarly, the Manual for Courts-Martial does not require personal data or character-of-service evidence to be presented to the convening authority as part of the SJAR under R.C.M. 1106. Because AFI 51–201 requires the PDS to be attached to the SJAR, the convening authority must consider it under R.C.M. 1107(b)(3)(A)(ii). Absent the AFI requirement, the personal data and character of prior service of the accused would be matters that are discretionary for the convening authority to consider, particularly as information from the "personnel records of the accused" under R.C.M. 1107(b)(3)(B)(ii). By directing the preparation of the PDS and its attachment to the SJAR, the Air Force has created an obligation to produce a document that the convening authority must consider before taking action.

Turning to the PDS itself, we readily acknowledge that Al Dhafra Air Base is "overseas" under the plain definition of "overseas," but AFI 51–201 sets out a more restrictive criterion for inclusion on the PDS of "overseas service," that is, service that has earned "credit for overseas service" under AFI 36–2110. Appellant has not presented any evidence or argued his deployment earned him such credit under AFI 36–2110, and our review of AFI 36–2110 indicates he was not eligible for the credit based on the length of his deployment.[2]

Similarly, "combat service" on the PDS is defined by AFI 51–201 as service for which hostile-fire or imminent-danger pay was awarded under DoD 7000.14–R. Appellant has not presented any evidence or argued that he either received or was entitled to such pay. Our review of the regulation indicates servicemembers deployed to Al Dhafra Air Base ceased to be eligible for

---

[2] AFI 36–2110 indicates credit for a completed short tour is warranted when an Airman deploys for 300 or more days in an 18-month period, but Appellant appears to have served only a six-month deployment. AFI 36–2110, *Assignments*, Table 3.4 (22 Sep. 2009, as amended by AFGM 2016–01, 23 Jun. 2016).

either pay on 31 May 2014, prior to Appellant's deployment there. *See* DoD 7000.14–R, Volume 7A, Chapter 10.

Because Appellant has failed to demonstrate his deployment warranted inclusion on his PDS under the criteria specified in AFI 51–201, he has failed to identify any error regarding the PDS. As a result, Appellant is entitled to no relief for the purported omission of his deployment from his PDS, and new post-trial processing is not warranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court