# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39680**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jeremy M. HOLDER**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 August 2020

————————————

*Military Judge:* Jennifer E. Powell.

*Approved sentence:* Dishonorable discharge, confinement for 5 years, and reduction to E-1. Sentence adjudged 25 February 2019 by GCM convened at Eielson Air Force Base, Alaska.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Kaylynn N. Foulon, USAF; Mary Ellen Payne, Esquire.

Before MINK, D. JOHNSON, and RICHARDSON, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge MINK and Judge D. JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, in accordance with his pleas and a pretrial agreement (PTA), of one specification of wrongful possession of child pornography in violation of

Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1,2] The court-martial sentenced Appellant to a dishonorable discharge, confinement for five years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.[3]

Appellant raises two issues on appeal: whether Appellant is entitled to sentence relief because (1) the sentence to confinement for five years is inappropriately severe, and (2) his combat service was omitted from the personal data sheet (PDS) provided to the military judge and the convening authority.[4] We find no error that resulted in material prejudice to Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

On 12 February 2018, while stationed at Eielson Air Force Base (AFB), Alaska, Appellant used peer-to-peer software to download a video file that contained child pornography. An agent with United States Army Criminal Investigation Command flagged this download. The agent traced the Internet Protocol (IP) address used for the download to Appellant.

An agent with the Air Force Office of Special Investigations (AFOSI) interviewed Appellant on 28 February 2018 after duly advising him of his rights pursuant to Article 31, UCMJ, 10 U.S.C. § 831. Appellant immediately admitted to downloading child pornography. He told the AFOSI agent the number of files (approximately 150), their location (certain folders on his MacBook Pro), and when he downloaded them (approximately four to five weeks before the interview). Appellant admitted he also downloaded a video of child pornography in 2014 at his previous duty station, Barksdale AFB, Louisiana. Appellant admitted to viewing all downloaded files, some as many as three times. He explained that the last time he downloaded child pornography was just before he saw that his IP address was flagged. Appellant told the agent he was not sexually aroused while viewing the images, but felt "empty."

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The remaining specifications and charge were withdrawn and dismissed with prejudice after arraignment.

[3] The adjudged sentence to confinement was less than the PTA cap of seven years. Additionally, the convening authority waived automatic forfeitures for the benefit of Appellant's wife and children.

[4] Appellant personally raises issue (2) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Appellant downloaded and viewed more than 130 different images and videos of pornography that depicted children—mostly girls—ranging from 3 to 10 years of age involved in various sexual acts. The Government introduced 25 of these images during trial as part of an attachment to the stipulation of fact admitted into evidence at trial. Appellant used search terms likely to yield images of children such as "3 yo," "10yr," and "nude children pedo." In a written unsworn statement presented at the sentencing hearing, Appellant described the two periods of his life when he downloaded child pornography as "difficult." He explained his actions were a way to understand his own child-sex victimization by a male family friend when Appellant was between the ages of 8 and 11.

## II. DISCUSSION

### A. Sentence Severity

#### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion to determine whether a sentence is appropriate, we cannot grant mercy. *United States v. Nerad*, 69 M.J. 138, 142–48 (C.A.A.F. 2010) (citation omitted). "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *See United States v. Rapert*, 75 M.J. 164, 170 (C.A.A.F. 2016) (citing *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007)).

We "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). When arguing sentence disparity and asking this court to compare his sentence with the sentences of others, Appellant bears the burden to demonstrate those other cases are "closely related" to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (citation omitted). Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared

. . . ." *Id.* When an appellant carries this burden, the Government must show a rational basis for the sentence disparity. *Id.*

### 2. Analysis

To support the argument that his sentence is highly disparate when compared to closely related cases, Appellant provided a "sampling of related cases" which involved "the use of peer-to-peer software and multiple downloaded images/videos." Appellant does not argue—nor do we observe from the record before us—that an accused in any of those cases is a coactor with Appellant or otherwise had any direct nexus to Appellant. Consequently, we decline to engage in sentence comparison; Appellant has not met his burden to identify a case "closely related" to his own.

As for sentence appropriateness, we have given individualized consideration to Appellant, the nature and seriousness of his offense as shown by the facts and circumstances, his record of service, and all other matters contained in the record of trial. We note Appellant had a positive work history, which included combat service. Appellant confessed his crimes when confronted by law enforcement, and pleaded guilty pursuant to a PTA that capped any term of confinement at seven years when he faced a maximum of ten years' confinement. At trial, Appellant stated he was sexually abused between the ages of 8 and 11 by a male family friend. We also note several aggravating factors. Appellant searched peer-to-peer software for pornography featuring very young children. His misconduct started at one duty location, and continued at another until he was caught. Appellant saved child pornography to his personal devices, and viewed some of the files more than once. Counsel presented these facts to the military judge, who we presume followed the law and afforded individualized consideration to Appellant, consistent with our practice to determine a sentence which included five years' confinement. *See Rapert*, 75 M.J. at 170. We find Appellant's approved sentence of a dishonorable discharge, confinement for five years, and reduction to the grade of E-1 is not inappropriately severe as a matter of law.

## B. Personal Data Sheet

### 1. Additional Background

The PDS (Prosecution Exhibit 2) admitted at trial without objection and attached to the staff judge advocate's recommendation (SJAR) listed Appellant's "Combat Service" as "None." The PDS included "Djibouti, DJIBO" in "Hardship Duty Pay," "Hostile Fire Pay," and "Imminent Danger Pay." In "Overseas Service (OCONUS)," in addition to Eielson AFB and Andersen AFB, Guam, it listed "Djibouti, DJIBO, 10 Jun 09 – 11 Dec 09."

Other documents admitted at trial reflect Appellant's deployment. Defense Exhibit I is an Air Force Achievement Medal citation awarded to Appellant for

his service to Combined Joint Task Force – Horn of Africa (CJTF–HOA). While a reader familiar with this mission may know that "Camp Lemonnier" and CJTF–HOA are in Djibouti, the citation does not state "Djibouti." Also, it describes an achievement "[w]hile deployed to Forward Operating Location Garissa, Uganda."[5] Appellant's enlisted performance report from this period references work Appellant did for a "SECNAV [Secretary of the Navy] Djibouti visit" and help Appellant rendered at an orphanage. In his unsworn statement, Appellant made a passing reference to his Djibouti deployment; he did not reference its combat character or any forward deployment. Appellant concedes that trial defense counsel did not object to the PDS being admitted into evidence, and now argues the PDS erroneously failed to reflect Djibouti and Kenya as "combat service."

**2. Law**

In presentencing, the prosecution "may obtain and introduce from the personnel records of the accused evidence of the accused's . . . character of prior service" following Service-specific regulations. Rule for Courts-Martial (R.C.M.) 1001(b)(2). "'Personnel records of the accused,' as referenced in R.C.M. 1001, includes those records made or maintained in accordance with Air Force directives that reflect the past military efficiency, conduct, performance, and history of the accused. . . ." Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 12.26 (18 Jan. 2019).[6]

"When there is error in the admission of sentencing evidence, the test for prejudice is 'whether the error substantially influenced the adjudged sentence.'" *United States v. Barker*, 77 M.J. 377, 384 (C.A.A.F. 2018) (citation omitted). This is determined by evaluating the relative strength of the parties' cases along with the materiality and quality of the evidence in question. *Id.* (citation omitted). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *Id.* (citation omitted).

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted). "Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error." *United States v. LeBlanc*, 74 M.J. 650, 660

---

[5] The reference to Garissa in "Uganda" appears to be in error. Garissa is the capital city of Garissa County in Kenya. *Who We Are*, Garissa County Assembly Website, https://garissaassembly.go.ke/who-we-are/ (last visited 21 Jul. 2020).

[6] This is the version of AFI 51-201 in effect on the date Prosecution Exhibit 2 indicates it was prepared—25 February 2019.

(A.F. Ct. Crim. App. 2015) (citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). To prevail under a plain error analysis, an appellant must show (1) there was an error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right. *Id.* (citation omitted). The threshold to establish prejudice from errors which impact an appellant's request for clemency from the convening authority is low, even in the context of plain error analysis, however there must be "some colorable showing of possible prejudice." *Id.* (citing *Scalo*, 60 M.J. at 437).

Before taking action on a sentence, the convening authority must consider the SJAR. R.C.M. 1107(b)(3)(A)(ii). The SJAR in an Air Force case should contain a copy of the PDS admitted at trial. AFI 51–201, ¶ A11.15. An error in the SJAR "does not result in an automatic return by the appellate court of the case to the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). "Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error . . . would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *Id.* (citations omitted).

The Rules for Courts-Martial do not require the SJA to inform the convening authority of an accused's combat service or related duty pay. However, when the SJAR does address such matters, the information must be accurate. *See United States v. Parker*, 73 M.J. 914, 921 (A.F. Ct. Crim. App. 2014) (finding plain error when the PDS omitted any mention of Appellant's combat and overseas service in Qatar and the United Arab Emirates).

"Combat service" on a PDS identifies "service for which the member was awarded 'special pay for duty subject to hostile fire or imminent danger' per DoD 7000.14-R, *Department of Defense Financial Management Regulation*, Volume 7A, Chapter 10. " AFI 51–201, Figure A2.11, n. 4. Only when a member is "currently receiving" hardship duty pay, hostile fire pay, or imminent danger pay as of the date of the PDS should that pay be identified on the PDS. *Id.* at n.6.[7]

Recently, this court examined the requirements—or lack thereof—of a PDS during trial and post-trial processing. *See United States v. Connors*, No. ACM S32557, 2019 CCA LEXIS 230 (A.F. Ct. Crim. App. 17 May 2019) (unpub.

---

[7] Neither Eielson AFB specifically nor Alaska generally is listed as an imminent-danger pay area in DoD FMR 7000.14-R, Volume 7A, Chapter 10. Appellant has not asserted error or prejudice for the listing of Djibouti as hardship duty pay, hostile fire pay, or imminent danger pay on the PDS.

op.). Put simply, while the Rules for Courts-Martial do not require the prosecution to introduce evidence of an accused's combat service, they do allow it. *See* R.C.M. 1001(b)(2). Air Force service regulations provide a template—the PDS—for trial counsel to introduce a summary of combat service and other personal data relating to the accused at presentencing. AFI 51-201, Figure A2.11.[8] When trial counsel introduces such evidence, it must be accurate. *See Parker*, 73 M.J. at 921.

### 3. Analysis

As Appellant did not object to the accuracy of his combat service on the PDS at the court-martial or in his clemency submission, we review its admission as sentencing evidence and in post-trial processing for plain error. Also, we consider separately the placement of "Djibouti" and omission of "Kenya" on the PDS.

The PDS admitted during presentencing at Appellant's court-martial specifically listed "combat service" as "none." This omission constituted plain and obvious error. Djibouti was a designated imminent-danger pay area during Appellant's deployment in 2009, which entitled him to special pay. Department of Defense 7000.14-R, *Financial Management Regulation* (DoD FMR), Volume 7A, Chapter 10, Figure 10–1 (Nov. 2018). Therefore, instead of "none," the PDS should have listed the Djibouti deployment location and dates under "combat service" in accordance with AFI 51–201. Instead, the location and dates were listed under "overseas service" and the location was listed under hardship duty pay, hostile fire pay, and imminent danger pay.

In the present case, the PDS, taken as a whole, reflects Appellant's period of combat service in Djibouti in 2009. It indicated "Djibouti, DJIBO" was overseas service and that Appellant received hardship duty pay, hostile fire pay and imminent danger pay for that service. Appellant has not shown—nor do we find—prejudice from this discrepancy. We conclude that omission of "Djibouti" under "combat service" in the PDS did not substantially influence Appellant's adjudged sentence. *See Barker*, 77 M.J. at 384.

Kenya and Uganda were also designated imminent-danger pay areas during Appellant's deployment in 2009. However, we are not convinced that omission of Appellant's forward-deployed service to Kenya as "combat service" in the PDS introduced at the sentencing hearing—or attached to the SJAR—constituted error. The information included in the PDS must be accurate and readily accessible from the accused's personnel records. Here, Appellant's medal citation erroneously indicated a forward deployment to "Garissa, Uganda" for

---

[8] AFI 51-201 requires a PDS at preferral (¶ 5.10) and as an attachment to the SJAR (¶ A11.15).

an unidentified period of time, while his enlisted performance report is silent on any forward deployment. Under the particular facts of this case, omission of "Kenya" from Appellant's PDS was not plain or obvious error.

Appellant has not attempted to show that he would have received a favorable recommendation by the SJA or corrective action by the convening authority without the error. The PDS indicates he was entitled to hardship duty pay, hostile fire pay, and imminent danger pay for his service in Djibouti. Moreover, Appellant's unsworn statement, an enlisted performance report, and his medal citation reference his deployment to Djibouti. The latter also references a forward deployment to Garissa. We find no colorable showing of possible prejudice in post-trial processing from the PDS errors in this case. *See Scalo*, 60 M.J. at 436–37.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court