# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic REYNA R. LOPEZTEGUI
## United States Air Force

## ACM S32209

## 11 May 2015

Sentence adjudged 19 November 2013 by SPCM convened at Wright-Patterson Air Force Base, Ohio. Military Judge: Ronald A. Gregory.

Approved Sentence: Bad-conduct discharge and confinement for 30 days.

Appellate Counsel for the Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel Steven J. Grocki; Major Daniel J. Breen; Captain Collin F. Delaney; and Gerald R. Bruce, Esquire.

Before

MITCHELL, WEBER, and CONTOVEROS
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

WEBER, Judge, delivered the opinion of the court, in which CONTOVEROS, Judge, joined. MITCHELL, Senior Judge, filed a dissenting opinion.

The appellant pled guilty at a special court-martial to one specification of absence without leave, in violation of Article 86, UCMJ, 10 U.S.C. § 886. A panel of officer members convicted her of the greater offense of desertion, in violation of Article 85,

UCMJ, 10 U.S.C. § 885. The members sentenced her to a bad-conduct discharge and confinement for 30 days.[1] The convening authority approved the sentence as adjudged.

The appellant asserts the following errors: (1) her sentence is legally and factually insufficient because it was based on the members' mistake of law, and (2) a post-trial processing error occurred because the staff judge advocate's recommendation (SJAR) and its addendum fail to accurately address the alleged error in the members' sentencing decision. We disagree, and affirm.

*Background*

After a promising start to her Air Force career, the appellant went absent without leave (AWOL) in September 2013 to her home of record. She received nonjudicial punishment for this misconduct.

A short time later, on the evening of Tuesday, 15 October 2013, the appellant rented a car and drove about seven hours from her duty station at Wright-Patterson Air Force Base, Ohio, to her home of record. She was not approved for leave or a pass and was scheduled to work on Wednesday. She was apprehended by the local police while at a hair appointment Thursday morning and was placed in a local confinement facility. She remained there until Saturday when her first sergeant and a supervisor picked her up and brought her back to Wright-Patterson. She was placed in pretrial confinement upon her return, where she remained until trial.

The appellant providently pled guilty to being absent without leave. The government then presented evidence on the charged greater offense of desertion. To demonstrate the appellant's intent to remain away from her place of duty permanently, the prosecution called the appellant's first sergeant to testify that when she brought the appellant back to Wright-Patterson, the appellant was crying and stated, "Take me back to jail. I don't want to go to Ohio. Just take me back to jail." The military judge also admitted the appellant's nonjudicial punishment action for the limited purpose of showing her intent to permanently remain away. Additionally, the prosecution introduced evidence of a conversation the appellant had after her nonjudicial punishment action with a co-worker. In this conversation about her resulting punishment, the appellant told the co-worker she would just go AWOL.

Following trial, counsel departed but the military judge and the court reporter remained behind in the courtroom. The president of the panel, Colonel (Col) DJ, approached the military judge and asked to speak with him. The military judge agreed, assuming Col DJ had comments about his general observations of the court-martial.

---

[1] The court-martial order lists that the approved sentence includes a reduction to E-1. The appellant was already an E-1 at the time of the court-martial, and no reduction in grade was adjudged. We order a corrected CMO to accurately reflect the adjudged sentence.

Instead, Col DJ expressed confusion over the sentencing instructions on a punitive discharge. Col DJ also stated that he believed the appellant and her counsel had both requested a discharge, and he believed adjudging a punitive discharge was the only option for effecting the appellant's separation from the Air Force.[2] Finally, Col DJ stated that he informed other members that a punitive discharge was the only option that existed to achieve the appellant's separation from the Air Force. The military judge told Col DJ trial defense counsel might contact Col DJ about this issue, and he promptly notified counsel for both sides of Col DJ's remarks.

Weeks later, the military judge conducted a post-trial hearing. The military judge summarized his conversation with Col DJ and provided counsel an instruction he would have given the members if Col DJ had asked in open court whether any other options existed to effect the appellant's separation from the Air Force.[3] The military judge did not have any of the members testify during the hearing; instead, he admitted e-mails between defense counsel and the members about this issue. The military judge also admitted clemency recommendations from three members to the convening authority. These recommendations generally noted the members' confusion on this issue, stated their belief that the appellant asked for a discharge and that a bad-conduct discharge was the only option to carry out this wish, and asked the convening authority to disapprove the bad-conduct discharge. The military judge specifically addressed whether Col DJ's remarks raised a concern that he unlawfully influenced the other panel members. The military judge rejected this notion, finding that Col DJ was too confused to exert unlawful influence over the other members. The military judge also noted that the junior panel member, Second Lieutenant JB, made no mention of any influence by Col DJ. The military judge found that he was not authorized to grant any relief due to this issue and noted that his role was merely to document the matter for consideration by the convening authority and this court.

---

[2] Neither the appellant nor her counsel asked the members to adjudge a punitive discharge. Trial defense counsel specifically argued "[the appellant] told you in her unsworn statement that she knows that the Air Force is not for her. She knows that it's time for her to move on. . . . That does not mean that a Bad Conduct Discharge is necessary or appropriate." Earlier in her argument, trial defense counsel used rhetorical questions to argue that a punitive discharge was not appropriate.

[3] Relying on *United States v. Friedmann*, 53 M.J. 800 (A.F. Ct. Crim. App. 2000), the instruction read:

> If the court does not adjudge a *punitive* discharge the accused might be subject to administrative discharge; however, the issue before you is not whether the accused should remain a member of the Air Force but whether [s]he should be punitively separated from the service. It is not properly your concern whether anyone else might choose to initiate administrative separation action or how the accused's service might be characterized by an administrative discharge authority. Your duty is to decide whether the accused should be sentenced to a *punitive* discharge by the court-martial, not whether [s]he should be retained or separated administratively.

The appellant asks this court to set aside the bad-conduct discharge. She frames the issue as one of legal and factual sufficiency of the sentence, asserting that the members acted based on a mistaken view "of both the facts and the law." The appellant does not specify what authority allows us to provide relief based on this issue, instead generally citing to our authority under Article 66(c), UMCJ, 10 U.S.C. § 866(c), to determine sentence appropriateness.

The appellant's request is based on the presumption that we may fully consider Col DJ's comments to the military judge, the members' correspondence with trial defense counsel, and the three members' clemency submissions to impeach the adjudged sentence. We reject this position. "Long-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." *United States v. Dugan*, 58 M.J. 253, 256 (C.A.A.F. 2003) (quoting *Tanner v. United States*, 483 U.S. 107, 127 (1987)) (internal quotation marks omitted). To this end, Mil. R. Evid. 606(b) broadly prohibits disclosure or consideration of the members' deliberative process:

> Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or, to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

None of the three listed exceptions to the rule (extraneous prejudicial information, outside influence, or unlawful command influence) applies here. Therefore, we may not consider any communication from the members that involves: (1) any matter or statement that occurred during deliberations, (2) "the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence, or (3) any matter "concerning the member's mental process in connection therewith." The communications from the members about their confusion, their thought process, and their discussions during their deliberations fall

squarely within this broad prohibition. Our superior court has adopted the position of the federal Courts of Appeals, which have "uniformly refused to consider evidence from jurors indicating that the jury ignored or misunderstood instructions in criminal cases." *United States v. Loving*, 41 M.J. 213, 236 (C.A.A.F. 1994); *see also* Rule for Courts-Martial (R.C.M.) 1008 (covering impeachment of sentence and referring to the discussion of R.C.M. 923: "Unsound reasoning by a member, misconception of the evidence, or misapplication of the law is not a proper basis for challenging the findings."). Therefore, "even if the court member's comment was evidence that the court members may have failed to heed the military judge's [instructions], consideration of such evidence was prohibited by Mil. R. Evid. 606(b)." *United States v. Combs*, 41 M.J. 400, 401 (C.A.A.F. 1995). The only substantive portion of the members' communications we may consider is the fact that they recommended clemency, along with a few broad statements about why the appellant's service record makes her deserving of clemency.

Having held that we may not consider any communication from the court members about their deliberative process, there is no basis to impeach the members' sentence. Our dissenting colleague reasons that the sentence nonetheless remains ambiguous because the announcement of a sentence that included a bad-conduct discharge was followed shortly thereafter by the panel president's comments indicating his doubts about this sentence. We find the instant situation readily distinguishable from cases in which courts have found a sentence ambiguous because of the court's actions after the sentence was announced. As the dissent notes, a finding of ambiguity generally arises when the members recommend clemency on their own instead of at the behest of defense counsel, and when that recommendation comes contemporaneously with the announcement of sentence such that the two acts are substantially part of the same event. *See generally United States v. Kaylor*, 27 C.M.R. 213 (C.M.A. 1959); *United States v. Huber*, 30 C.M.R. 208 (C.M.A. 1961). Excluding evidence of the deliberative process, the pure clemency recommendations from the members did not come for some time after the announcement of sentence, and they only originated when trial defense counsel solicited the recommendations. In addition, the members' clemency recommendations arose only after they learned of the instruction the military judge would have issued had the members asked during the court-martial about other discharge options. Thus, the members' clemency recommendations were not, in the broad sense, "based on the same evidence" as their adjudged sentence, another requirement to find an adjudged sentence ambiguous. *Kaylor*, 27 C.M.R. at 215.

Excluding the statements concerning deliberative process in the members' communications, the members' sentence is not ambiguous. The mere fact that the members later recommended clemency for the appellant does not render their adjudged sentence ambiguous. Our superior court has expressly stated as such:

> To accord the effect of inconsistency to a post-trial recommendation for clemency is to permit impeachment of its sentence by the court-martial after its adjournment. . . .
>
> It is settled law that Federal civil jurors may not impeach their verdicts by post-trial declarations. The same rule should be applied to statements by court-martial members which are made following adjournment and which do not form an integral part of the announcement of the sentence so that doubt is cast upon its meaning.

*Huber*, 30 C.M.R. at 210 (citations omitted).

Two more points related to this issue deserve comment. First, the military judge stated that if asked about the possibility of administrative discharge, he would have given an instruction based on our guidance in *United States v. Friedmann*, 53 M.J. 800 (A.F. Ct. Crim. App. 2000). The military judge committed no error by not giving the instruction without being asked, but nothing would have prevented him from issuing this instruction up front, without being asked about this matter. Our experience indicates that members routinely have questions about the differences between punitive and administrative discharges. Incorporating a *Friedmann* instruction into sentencing instructions in all cases with members could prove helpful in eliminating the kind of confusion that apparently existed in the members' minds in this case.

Second, while we may not consider the members' communications about their deliberative process, these communications were nonetheless raised to the attention of the convening authority. The convening authority could have elected to exercise her broad authority to grant clemency on this issue. Notions of fundamental fairness might have counseled in favor of her doing so. Nonetheless, clemency is a matter strictly within the purview of the convening authority, and this court retains no power to second-guess the convening authority's action in this respect. *See United States v. Nerad*, 69 M.J. 138, 148 (C.A.A.F. 2010).

*Staff Judge Advocate's Recommendation*

The appellant also alleges that the staff judge advocate's recommendation (SJAR) was "incomplete, misleading and erroneous" in two respects. First, the appellant alleges that the SJAR erroneously advised the convening authority that the members made a "competent decision" to adjudge a bad-conduct discharge and incorrectly stated that there was no evidence that the members did not understand and follow the instructions in reaching their decision. Second, she asserts that the SJAR was misleading by suggesting that the military judge granted the post-trial session solely to address the concern of whether Col DJ exerted unlawful influence over other members.

We review the correctness of post-trial processing de novo. *United States v. Parker*, 73 M.J. 914, 920 (A.F. Ct. Crim. App. 2014).

If error in the SJAR occurs, such error "does not result in an automatic return by the appellate court of the case to the convening authority. Instead, an appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the convening authority." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). In determining whether the error might have affected the convening authority's action, the threshold for establishing prejudice is low because the convening authority possesses significant power to grant clemency. *United States v. Parsons*, 61 M.J. 550, 551 (A.F. Ct. Crim. App. 2005). In making this determination, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)) (internal quotation marks omitted). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)). "Because the threshold for showing prejudice is so low, it is the rare case where substantial errors in the SJAR, or post-trial process in general, do not require return of the case for further processing." *Parker*, 73 M.J. at 921 (quoting *United States v. Lavoie*, ACM S31453 (recon), unpub. op. at 4 (A.F. Ct. Crim. App. 21 Jan 2009)) (internal quotation marks omitted).

In the instant case, it is not clear that the SJAR or its addendum contains any error. The language of which the appellant complains is emphasized in the following excerpts from the SJAR addendum:

> At the time of the case, the members were properly instructed both orally and in writing by the military judge and given the opportunity to ask questions. Concerning the [bad-conduct discharge], the military judge instructed as follows: This court may adjudge a [bad-conduct discharge]. Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force. A [bad-conduct discharge] is a severe punishment and may be adjudged for one who, in the discretion of the Court, warrants severe punishment for bad conduct. . . .

> This instruction clearly indicated that a [bad-conduct discharge] is intended as punishment. A panel is presumed to understand and follow the instructions of the military judge absent competent evidence to the contrary. (*United States v.*

*Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001)) Taking into account the information that they were to consider at the time of the sentencing hearing, *the members in this case assessed the evidence and made a competent decision to adjudge a [bad-conduct discharge].*

Based on the affidavits submitted by the defense, it appears that some of the members may not have been fully aware of the circumstances under which [the appellant's] commander could choose to administratively discharge her should they not adjudge a [bad-conduct discharge]. Given that collateral acts (such as administrative discharge) that could occur based on the member's guilty plea are not an appropriate consideration for the members, and that the military judge's instructions were clear on their face, *there is no evidence that the members did not understand and follow the instructions in reaching their decision.* None of the affidavits presented contradicts this point. As such, I find no legal error requiring your action in the panel's failure to request additional instruction.

(Emphasis added).

The comments of which the appellant complains came in the context of a much broader discussion. Taken in its entirety, the SJAR and its addendum clearly placed the issue of the members' confusion before the convening authority. The SJAR and its addendum also correctly noted that the military judge's sentencing instructions were legally correct. The SJAR addendum merely noted that collateral consequences of a conviction, such as administrative discharge, are not normally a proper consideration in determining an appropriate sentence.

As to the SJAR's statement about the purpose behind the post-trial session, the only matter the military judge decided at the post-trial hearing was that Col DJ did not unlawfully influence other panel members. The SJAR simply noted this point and voiced agreement with this determination.

Even assuming the SJAR or its addendum was erroneous in some respect, we find such error was not substantial and did not give rise to a colorable showing of possible prejudice. Both the SJAR and the clemency submissions fully informed the convening authority of this issue. The convening authority nonetheless elected not to grant clemency. Under these circumstances, we see no possibility that the convening authority's clemency decision might have changed had the SJAR or its addendum used slightly different language to characterize this issue.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

Senior Judge MITCHELL, dissenting.

I would affirm the findings and remand the case for a sentence rehearing because the member's actions resulted in an ambiguous sentence. As addressed by the majority, the president of the panel, Col DJ, asked to speak to the military judge shortly after the court-martial adjourned. Col DJ expressed confusion over the sentencing instructions on a punitive discharge. The military judge preemptively halted the member from making further statements. The military judge notified counsel for both sides and scheduled a post-trial hearing to be held a few weeks later.

Prior to the post-trial hearing, the military judge provided counsel with a copy of an instruction about the difference between punitive and administrative discharges that he would have given the members if Col DJ's question had been asked in open court. The military judge did not have any of the members called during the hearing; instead, he admitted into evidence e-mails between defense counsel and the members and clemency recommendations from the members.

Three of the five court members wrote clemency letters on behalf of the appellant. Col DJ wrote that he "may have improperly characterized the [bad-conduct discharge] as the only option available to the Air Force to effect the discharge" and asked the convening authority to consider an administrative discharge. Major MP explained that after receiving the additional instructions, he believed the sentence to confinement was sufficient and asked the convening authority to "disapprove the BCD portion of the sentence." Second Lieutenant AP explained that he "was under the impression that if the panel did not render a sentence including a [bad-conduct discharge the appellant] would serve out . . . her enlistment" and "did not know it was possible for the commander or convening authority to separate [the appellant] from the Air Force unless instructed to do so by a court martial panel." He also asked the convening authority to "disapprove the court martial panel's sentence and administratively discharge [the appellant] in place of a [bad-conduct discharge]."

The military judge found that the members were confused but "confusion does not equal influence." In determining whether to investigate or question court members about a verdict, the trial court maintains wide discretion, and the trial court's decision will be reviewed for an abuse of that discretion. *United States v. Lambert*, 55 M.J. 293, 295–96

(C.A.A.F. 2001). The military judge did not abuse his discretion in conducting the post-trial session in this manner. In hindsight, given the short amount of time that elapsed from the court-martial adjourning and Col DJ's statements about the sentence, it would have been preferable to have the post-trial hearing held immediately. However, the military trial judge did not abuse his discretion in the actions he took. The military judge was presented with an unusual situation where the president of the panel provided information indicating there was a potentially ambiguous sentencing verdict. The military judge immediately notified the parties. Trial defense counsel specifically told the members not to disclose their deliberations or votes and obtained clemency support from three of the five members.

We are limited in how much evidence we can use from the members' clemency recommendations and their e-mails with defense counsel. "Courts in the military justice system may not consider members' testimony about their deliberative process." *United States v. Green*, 68 M.J. 360, 363 (C.A.A.F. 2010). Mil. R. Evid. 606(b) expressly forbids the use of evidence of any statement by a panel member about the panel's deliberative process except in certain limited circumstances, none of which are implicated here. "The purpose of this rule is to protect freedom of deliberation, protect the stability and finality of verdicts, and protect court members from annoyance and embarrassment." *United States v. Loving*, 41 M.J. 213, 236 (C.A.A.F. 1994) (quoting *United States v. Bishop*, 11 M.J. 7, 9 (C.M.A. 1981)) (internal quotation marks omitted). The information in the members' clemency statements does not contain any evidence of outside influence or unlawful command influence. The information also does not lead to a conclusion of the introduction of extraneous prejudicial information; rather, it was the lack of additional instruction that led to some confusion. Therefore, we cannot consider any portions of the evidence that delve into the members' deliberative process.

Similarly, a sentence can only be impeached "when extraneous prejudicial information was improperly brought to the attention of a member, outside influence was improperly brought to bear upon any member, or unlawful command influence was brought to bear upon any member." R.C.M. 1008. The discussion to this rule refers back to the discussion of R.C.M. 923 related to impeachment of findings and generally notes that "[u]nsound reasoning by a member, misconception of the evidence, or misapplication of the law is not a proper basis for challenging" an otherwise facially valid result. R.C.M. 923, Discussion. The members' statements do not indicate improperly introduced information, influence, or unlawful command action was provided to or brought to bear upon any member. Therefore, "even if the court member's comment was evidence that the court members may have failed to heed the military judge's" instructions, "consideration of such evidence was prohibited by Mil. R. Evid. 606(b)." *See United States v. Combs*, 41 M.J. 400, 401 (C.A.A.F. 1995).

However, this still leaves open whether the admissible evidence results in an ambiguous sentence. Our superior court has returned cases for new sentencing

proceedings when clemency recommendations by the members result in ambiguous sentences. In *Kaylor*, 27 C.M.R. 213, immediately after announcing the sentence, which included a bad-conduct discharge, the president of the court-martial announced, sua sponte, "[t]he court recommends clemency in the above-entitled case. The clemency recommended is that the portion of the sentence adjudging bad conduct discharge be remitted." *Id.* at 213–14. The court's president then gave various reasons for the recommendation. *Id.* Our superior court found the sentence to be ambiguous because of the "contemporary announcement of clemency in the form of a remission of a portion of the sentence just adjudged." *Id.* at 215. The court also noted there was nothing to indicate the court members knew they did not need to impose a bad-conduct discharge. *Id.* at 214. This is because at the time of that court-martial in 1959, there was no requirement to give instructions on sentence and the members had no such instructions. The court distinguished the concept of an ambiguous sentence from the impeachment of a sentence:

> The question logically arises as to why a court-martial would impose a bad-conduct discharge and then, based on the same evidence, recommend a remission of it if they were not under the impression they were required to adjudge the discharge in the first instance. We do not treat this as an impeachment of the verdict by the court but rather as something more akin to an inconsistent or, at the least, ambiguous verdict. Impeachment of a verdict more properly refers to an attempt to show by evidence of jurors or others that the jury misunderstood their instructions, that the verdict was determined by chance, or the presence of misconduct or something of a similar nature. No contention is made by the members of the court that the sentence as announced does not properly reflect their intention. What we have, rather, is an action so inherently inconsistent that we are not able to reconcile the court's actions and are led to question whether they had a proper appreciation of their own duties and powers.

*Id.* at 215. (internal citations omitted).

Our superior court reached the opposite conclusion in *United States v. Doherty*, 17 C.M.R. 287 (C.M.A. 1954) when it concluded clemency recommendations from the members did not result in an ambiguous sentence. *Doherty* had facts similar to *Kaylor*, except there the members recommended clemency in the form of remission of the bad-conduct discharge in clemency submissions prepared by defense counsel, not contemporaneously with announcement of the sentence, and they received sentencing instructions regarding punitive discharges.

> A clemency recommendation made contemporaneously with the sentence may sometimes indicate that the court members misunderstood the full scope of their sentence powers. But the concurrence of sentence and recommendation need not necessarily be the product of confusion or misunderstanding. If therecord of trial shows the court-martial understood the relationship of the recommendation to the sentence adjudged, there is no reason to question either the sentence or the recommendation.

*United States v. Keith*, 46 C.M.R. 59, 63 (C.M.A. 1972) (internal citation omitted).

Ordinarily, a post-trial clemency recommendation by the members cannot form the basis for impeaching an otherwise valid sentence. *Huber,* 30 C.M.R. at 209–210. A clemency request by the members made days or even hours after the sentence would not require a conclusion of an ambiguous sentence. *See United States v. Turner*, 34 C.M.R. 215, 219 (C.M.A. 1964) ("[A]cceptance of the principle that a court-martial can legally and properly recommend administrative action, which might eventually lead to a lessening of the burden of a sentence imposed by it, does not necessitate reversal of the accused's sentence."). Affidavits, clemency requests or other communications from court-martial members will not be considered to create sentence ambiguity and may not be solicited for that purpose. However,

> consideration must be given to the surrounding circumstances to determine whether inconsistency exists between the sentence imposed by the court-martial and a recommendation it makes to the reviewing authority for approval of a lesser sentence. Two circumstances bear strongly upon the matter. The first is whether the recommendation originates with the court or with defense counsel; and the second is whether the recommendation is made at the same time as the imposition of sentence or so close to that time as to indicate reasonably that the two acts are substantially part of the same event.

*Huber*, 30 C.M.R at 209–210.

In this case, the facts as presented resulted in an ambiguous sentence. I am convinced that the comments by the president of the court-martial panel to the military judge immediately after adjournment indicate that the recommendation originated with the court-members. I recognize that the clemency letters submitted at the post-trial hearing were generated by the members after defense counsel intervened. However, this is outweighed by the other evidence in the record about the additional surrounding circumstances. Regarding the second factor, I would conclude that the statements by the

president immediately after adjournment make this case more analogous to a recommendation that is so close in time to the original sentencing such as that the two decisions are substantially part of the same event. I would consider as part of the surrounding circumstances that three of the five members wrote clemency statements on behalf of the appellant requesting that an administrative discharge be substituted for a punitive discharge.

An additional part of the surrounding circumstances includes this exchange between the military judge and Col DJ after the members were provided with the sentencing worksheet:

> [Military Judge]: . . . Any questions on the worksheet?
>
> [Col DJ]: Yes, Your Honor. Is this the full range, our options?
>
> [Military Judge]: That's the full range.
>
> [Col DJ]: That's all we have?
>
> [Military Judge]: Those are all the options available.
>
> [Col DJ]: Okay. I was under the impression there were lesser, up to the maximum.
>
> [Military Judge]: That's right.
>
> [Col DJ]: These are all the lesser options as well?
>
> [Military Judge]: That's right. And the first option you'll see is "No Punishment." Then it moves up through financial penalties, restraint penalties. The last option is a punitive discharge.
>
> [Col DJ]: We would consider as many blocks as we consider proper punishment?
>
> [Military Judge]: That's right
>
> [Col DJ]: I can't check all the blocks because that would include no punishment.
>
> [Military Judge]: Right
>
> [Col DJ]: So I have to check one for—

[Military Judge]: The ones that apply.

The military judge explained at the post-trial hearing that if the members had asked about an administrative discharge, he would have provided the members a specific tailored instruction. I would consider as part of the surrounding circumstances that this tailored instruction was not provided to the members before they announced their sentence. Our superior court has referred to instructions as the torch of enlightenment which help the members see through the darkness of misunderstanding. *United States v. Hutton,* 34 C.M.R. 146, 150 (C.M.A. 1964). As the majority notes, an instruction about the differences between an administrative discharge and a punitive discharge is not part of the standard instructions. I join them in recommending that it should be included. I do not fault the military judge for not sua sponte providing the instruction. We have additional insight on the context of the members' questions on the sentencing worksheet from the later events. The military judge expressed regret that the members did not ask a clearer question before adjudging the sentence. I would consider as part of the surrounding circumstances that the standard instructions do not provide any light to the members and leave them lost in the dark regarding the difference between an authorized punishment of a punitive discharge and the collateral consequence of a possible administrative discharge. *Cf. United States v. Tschip*, 58 M.J. 275 (C.A.A.F. 2003) (holding that military judge properly instructed members that an administrative discharge was a collateral matter).

As part of the surrounding circumstances, I would also consider the severity of the adjudged sentence compared to the offense. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006); *see also United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). This particular appellant was an Airman who was performing above average until she went AWOL and then later deserted. The appellant's desertion lasted for about 36 hours, a far shorter time than most desertion courts-martial. *See United States v. McCrary,* 1 C.M.R. 1, 6 (C.M.A. 1951) ("The longer the absence and the greater the distance from the unit the more reasonable the inference [of intent to permanently remain away]. The shorter the time and distance the less the inference is bottomed on reason."); *see, e.g., United States v. Oliver*, 70 M.J. 64 (C.A.A.F. 2010) (appellant absent from military duty for nearly three years). The appellant returned to her home and her mother. The appellant did not desert in a combat zone nor to avoid hazardous duty. However, the appellant had previously been AWOL, emptied her dorm room, and had remarked that she would go AWOL again. The members were instructed a bad-conduct discharge is a "severe punishment." While a bad-conduct discharge and 30 days of confinement may have been

an appropriate sentence, the severity of the sentence compared to the evidence in the record is additional evidence that the surrounding circumstances equate to an ambiguous sentence.

I emphasize the highly unusual facts in this case that lead me to conclude that the sentence is ambiguous. The panel's president made spontaneous, unsolicited comments immediately following adjournment of the court-martial. These nearly simultaneous statements by the president of the panel are coupled with the evidence that two additional members requested that same clemency. The military judge provided only the minimum required sentencing instructions which do not enlighten the members on the differences between an administrative and punitive discharge. The members raised questions about lesser forms of punishment earlier when given the sentencing worksheet. The members' adjudged sentence borders on being disproportionate. This evidence collectively creates the sentence ambiguity. I would order a sentence rehearing.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court