# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Technical Sergeant JOE A. GARCIA
## United States Air Force

## ACM 38814

## 16 August 2016

Sentence adjudged 15 January 2015 by GCM convened at Dyess Air Force Base, Texas. Military Judges: Mark W. Milam (sitting alone) and Tiffany M. Wagner (arraignment).

Approved Sentence: Bad-conduct discharge, confinement for 3 months, and reduction to E-1.

Appellate Counsel for Appellant: Major Lauren A. Shure.

Appellate Counsel for the United States: Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before

ALLRED, DUBRISKE, and J. BROWN[1]
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

At a general court-martial composed of a military judge sitting alone, Appellant was convicted of willful dereliction of duty, maltreatment, and abusive sexual contact in

---

[1] Chief Judge Allred authored and participated in this decision prior to his retirement.

violation of Articles 92, 93, and 120, UCMJ, 10 U.S.C. §§ 892, 893, 920.[2] The court sentenced Appellant to a bad-conduct discharge, confinement for 3 months, and reduction to E-1. The convening authority approved the sentence as adjudged.

Before us, Appellant claims (1) that error in the Staff Judge Advocate's Recommendation (SJAR) requires remand for new post-trial processing and (2) that conditions of his post-trial confinement warrant sentence relief. Finding no error materially prejudicial to Appellant's substantial rights, we affirm.

*Background*

Appellant served as an air traffic controller. In March 2013, a group of eight women—individuals from Appellant's shop and their civilian friends—went together for a "ladies night out." The women rode in a mini-van to a restaurant and then to a bar where Appellant met them and joined in their socializing. Afterward, Appellant rode with the eight women to their next destination. He did so with one female sitting on his lap and his arm around the shoulder of a second female, Senior Airman (SrA) AT. As they rode in the van, Appellant put his hand down SrA AT's shirt and touched her breast. She grabbed his hand and pushed it away. Shortly thereafter, he put his hand down her shirt a second time, and again SrA AT pushed it away. When Appellant put his hand down her shirt a third time, SrA AT yelled at him to stop—and he did so. Later that evening at a house party, Appellant made further unwelcome advances toward SrA AT. He commented on her breasts and told her he wanted to bend her over and have sex with her.

Appellant also made uninvited sexual comments to SrA AT at work. In October 2013, while alone with her in the air traffic control tower, Appellant turned the conversation to sex. He told SrA AT that she should be grateful he had supported her for an award and a favorable performance evaluation. He commented upon the size of his penis and he asked her about her sex life. He also urged her to expose her breasts and have sex with him in the control tower. Appellant told SrA AT not to tell anyone about the things he said to her.

Appellant made similar sexual comments, also in the workplace, to another air traffic controller, SrA KB. He repeatedly told SrA KB that he wanted to meet at her place or his for sex and he wanted to be her "f[**]k buddy." Appellant asked SrA KB to let him see and touch her breasts. On two occasions, SrA KB allowed Appellant to touch her breasts: once over her shirt and once beneath her shirt.

---

[2] Appellant was found not guilty of one specification of willful dereliction of duty and one specification of abusive sexual contact in violation of Articles 92 and 120, UCMJ, 10 U.S.C. §§ 892, 920.

## I. SJAR Error

Both parties agree that the maximum confinement for the offenses of which Appellant was found guilty was 8 years and 6 months; however, the SJAR in this case incorrectly advised the convening authority that the maximum sentence included 16 years confinement. Appellant did not object to this error during post-trial proceedings. He argues now, however, that the mistake warrants new post-trial processing. As there was no colorable showing of prejudice, we disagree.

We normally review the correctness of post-trial processing de novo. *United States v. Parker*, 73 M.J. 914, 920 (A.F. Ct. Crim. App. 2014). However, failure to timely comment on matters in an SJAR forfeits any later claim of error in the absence of plain error. Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005); *Parker*, 73 M.J. 920. To prevail under a plain error analysis, an appellant bears the burden of showing that: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

If an error in the SJAR occurs, an appellate court may review the matter to determine if the accused has been prejudiced by evaluating whether the error has any merit and whether it led to a favorable recommendation by the staff judge advocate or corrective action by the convening authority. *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996). In determining whether the error might have affected the convening authority's action, the threshold for establishing prejudice is low. *United States v. Parsons*, 61 M.J. 550, 551 (A.F. Ct. Crim. App. 2005). In making this determination, we recognize that historically a convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono,* 26 M.J. 240, 243 n.3 (C.M.A. 1988)). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho,* 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)). "Because the threshold for showing prejudice is so low, it is the rare case where substantial errors in the SJAR, or post-trial process in general, do not require return of the case for further processing." *Parker*, 73 M.J. at 921 (quoting *United States v. Lavoie*, ACM S31453 (recon), unpub. op. at 11 (A.F. Ct. Crim. App. 21 January 2009)) (quotation marks omitted).

We find the misstatement of maximum confinement to be error in this case, and we find that error to be plain and obvious. We do not, however, believe that error affected Appellant's chances for clemency. Appellant's dereliction of duty, maltreatment of a subordinate, and abusive sexual contact constitute severe misconduct. His sentence, with its confinement element of only three months, was, in our opinion, modest under the circumstances. We find no colorable showing of possible prejudice in this case. *See Kho*, 54 M.J. at 65. We are confident that stating the proper maximum confinement would not

have led to a more favorable recommendation nor clemency by the convening authority. *See Green*, 44 M.J. at 95.

## II. Conditions of Post-Trial Confinement

At the close of Appellant's trial, he entered confinement at Taylor County Adult Detention Center (TCADC) in Abilene, Texas. Appellant alleges that the conditions of his confinement were so egregious as to warrant sentence relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c). *See United States v. Gay*, 74 M.J. 736 (A.F. Ct. Crim. App. 2015) (providing sentence relief for post-trial confinement conditions that did not constitute a violation of either the Constitution of the United States or Article 55, UCMJ, 10 U.S.C. § 855). Under the facts of this case, we disagree.

In a sworn declaration, Appellant states that he was assigned to a single-person cell in a section of TCADC "reserved for medical personal [sic] and bad behavior inmates." He declares that he was required to remain in his cell for 23 hours each day throughout the 75 days of his post-trial confinement. According to Appellant, he was allowed to leave his cell and visit a day room—where he could shower, watch television, and make phone calls—for just one hour a day.

Appellant further complains that the water in the day room shower was often cold, and that it cost $10.00 for each 10-minute card needed to access the telephone. He states that cracks around the toilet allowed cockroaches to enter his cell, and that he was required to drink poor quality water from the sink in his cell. According to Appellant, inmates in the general population were allowed greater freedoms, including unlimited access to showers, television, and the telephone. Appellant states that, during the final two weeks of his confinement, he was moved to a different cell because the cell he occupied had a broken intercom and low water pressure.

In response, the Government has provided a sworn statement from the Staff Investigator Grievance Officer at TCADC. The Grievance Officer states that Appellant's 75 days at TCADC ran from 15 January 2015 through 30 March 2015. According to the Grievance Officer, Appellant occupied one cell from the time of his arrival until 16 March 2015, when he was moved to a second cell because his original cell had a broken intercom button. Both cells were single-person cells, with "open barred doors facing the run of the facility." Each cell had a window looking onto a recreation yard, along with a bed, a desk, a stool, a toilet/sink combination, and a shelf. TCADC also maintained single-person cells with solid doors and just one small window which remained covered, but Appellant was not confined in this type of cell. The Grievance Officer agrees that Appellant had one hour per day of day room access. According to the Grievance Officer, Appellant would also have been allowed recreation periods no less than three times a week. The Grievance Officer states that jail standards set the upper limit for water temperature, which is lower than is common in some homes. He declares also that the living conditions were inspected

in February 2014 and March 2015 and TCADC passed both inspections. The Grievance Officer states that TCADC maintains a grievance process by which inmates may lodge complaints, and, during his stay, Appellant never filed a grievance or complaint.

The Government has also provided a sworn declaration from Staff Sergeant (SSgt) CA who served as the noncommissioned officer in charge (NCIOC) of Corrections at Dyess Air Force Base, Texas. SSgt CA states that she made weekly health and welfare visits to Appellant during his confinement, and at no time did Appellant complain to her about any conditions at the TCADC. SSgt CA states:

> In regards to TSgt Garcia's placement in single person cells, pursuant to AFI 31-105, paragraph 5.2.4.1 we have to ensure that military confines [sic] are separated from illegal aliens/foreign nationals and not comingled with civilians or other military with the opposite pre- or post-trial status. Accordingly, our agreement with Taylor County requires that Air Force members be housed separately from general population. That said if two Air Force members were confined to the Taylor County facility at the same time, and had the same post-trial status, they would be able to interact during day room and recreation time. [In the two years that] I have been NCOIC, such a situation has occurred and the members were allowed to interact in the day room and recreation center. During TSgt Garcia's confinement, there was no other Air Force member at the facility.

Appellant does not contend that the conditions of his confinement amounted to cruel or unusual punishment in violation of the Eighth Amendment[3] or Article 55, UCMJ. Nor do we find any such violation.[4] Instead, citing *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F 2016), Appellant invites us to exercise

---

[3] U.S. Const. amend. VIII.

[4] We review de novo allegations of cruel and unusual punishment. *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001). Both the Eighth Amendment and Article 55, UCMJ, 10 U.S.C. § 855 prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, [UCMJ,] except in circumstances where . . . legislative intent to provide greater protections under [Article 55, UCMJ,]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citing *United States v. Wappler*, 9 C.M.R. 23, 26 (C.M.A. 1953)). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). A violation of the Eighth Amendment is shown by demonstrating: "(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [the appellant's] health and safety; and (3) 'that [the appellant] has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938.'" *Id.* (footnotes omitted) .

our authority under Article 66(c), UCMJ to disapprove his bad-conduct discharge or grant other sentence relief.

This court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. §866(c). Before applying this standard, we must first determine what facts are properly before this court, and whether we are required to remand this case for a post-trial fact-finding hearing. In *United States v. Fagan*, 59 M.J. 238, 241–42 (C.A.A.F. 2004), our superior court determined that the framework of *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), governs our determination of whether a post-trial fact-finding hearing is necessary to resolve "a post-trial claim that is framed by conflicting affidavits." Therefore, the following principles (originally set forth to deal with post-trial claims of ineffective assistance of counsel) determine when a post-trial fact-finding hearing is required:

> First, if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis.
>
> Second, if the affidavit does not set forth specific facts but consists instead of speculative or conclusory observations, the claim may be rejected on that basis.
>
> Third, if the affidavit is factually adequate on its face to state a claim of legal error and the Government either does not contest the relevant facts or offers an affidavit that expressly agrees with those facts, the court can proceed to decide the legal issue on the basis of those uncontroverted facts.
>
> Fourth, if the affidavit is factually adequate on its face but the appellate filings and the record as a whole "compellingly demonstrate" the improbability of those facts, the Court may discount those factual assertions and decide the legal issue.
>
> Fifth, when an appellate claim of ineffective representation contradicts a matter that is within the record of a guilty plea, an appellate court may decide the issue on the basis of the appellate file and record (including the admissions made in the plea inquiry at trial and appellant's expression of satisfaction with counsel at trial) unless the appellant sets forth facts that would rationally explain why he would have made such statements at trial but not upon appeal.

ACM 38814

Sixth, the Court of Criminal Appeals is required to order a factfinding hearing only when the above-stated circumstances are not met. In such circumstances the court must remand the case to the trial level for a *DuBay* proceeding. During appellate review of the *DuBay* proceeding, the court may exercise its Article 66 factfinding power and decide the legal issue.

*Ginn*, 47 M.J. at 248; *see also United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967).

Applying the *Ginn* framework, we find that remanding this case for a fact-finding hearing is not necessary. *See Ginn*, 47 M.J. at 248. The statement of facts contained in Appellant's declaration is largely uncontested by the Government. Furthermore, to the degree discrepancies exist between the submissions of the parties, our resolving those discrepancies in favor of Appellant would not result in granting relief.

In *Gay*, 74 M.J. 736, we found that the conditions of the appellant's post-trial confinement did not constitute a violation of his rights under the Eighth Amendment or Article 55, UCMJ; nevertheless, we exercised our authority under Article 66(c), UCMJ, to grant modest sentence relief.[5] Reviewing that decision, our superior court held that this court "did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55 violation." *Gay*, 75 M.J. at 269. In affirming our decision, however, the Court of Appeals for the Armed Forces noted that *Gay* involved a unique set of facts with post-trial legal errors that included both a violation of the appellant's rights under Article 12, UCMJ,[6] and the ordering of solitary confinement by an Air Force official where an alternative solution was available. *Id.* Our superior court emphasized, "In reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.*

Ultimately, we anticipate that only in very rare circumstances will this court exercise our Article 66(c), UCMJ, authority to grant sentence relief based upon conditions of post-trial confinement when we have found no violation of the Eighth Amendment or Article 55, UCMJ. *Cf. United States v. Nerad*, 69 M.J. 138, 145-47 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency.) Such circumstances do not exist here.

---

[5] In *Gay*, the sentence approved by the convening authority was a bad-conduct discharge, confinement for 5 months, forfeiture of all pay and allowances, and reduction to the grade of E-3. In granting relief, we found the following sentence appropriate: a bad-conduct discharge, confinement for 3 months, and reduction to E-3. *Gay*, 74 M.J. at 738, 745.

[6] Article 12, UCMJ, 10 U.S.C. § 812 states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces."

Unlike the situation in *Gay*, Appellant in the present case—despite having mechanisms to do so—made no complaint regarding any condition of his confinement before raising the matter on appeal. *See Gay*, 74 M.J. at 738–42. Our superior court has declared, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id*. at 471 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). Because a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated. *Id*. Appellant must show that "absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138." *Id*. (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)).

Moreover, nothing regarding Appellant's confinement strikes us as especially unusual or egregious. Appellant was never confined with foreign nationals—the legal error which "sparked" the "faulty post-trial process" in *Gay*. *See Gay*, 75 M.J. at 269. Appellant does not claim any infliction of physical or mental abuse. His complaint also indicates no serious act or omission resulting in a denial of medical attention, proper food, or other necessities. The circumstances of his confinement do not appear to involve the extreme segregation often associated with what one might call "true" solitary confinement. Appellant does not claim any impact upon his access to counsel nor any prejudice to his post-trial due process rights. Nor do we find any other circumstance so severe as to warrant the extraordinary use of our Article 66(c) power. Accordingly, we reject this assignment of error.

## Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court